And we'll move to our second case for argument this morning, Shannon Agofsky v. Bureau of Prisons. Ms. Palmer, whenever you're ready. Good morning, Your Honors, and may it please the Court. Megan Palmer for Plaintiff Appellant Shannon Agofsky. Mr. Agofsky has been married for nearly five years and has never been allowed to see his wife in person. And the reason is that BOP has refused to follow its own regulations. Well, the reason is that he didn't follow the prison's regulations about getting married. I think the marriage regulations are a red herring in this case. They're highly relevant. BOP has expressly recognized that Mrs. Agofsky is Mr. Agofsky's wife. They have never, in the course of adjudicating the request or litigating this case, said that she is not his wife. And the visitation regulations are unambiguous about the standard that applies to a wife. The problem is the prison knew nothing about her because he circumvented the prison regulations about requests for marriage while incarcerated. So the prison had no opportunity before he married her telephonically while she was in Germany, where I understand she remains. She's not a U.S. citizen. She doesn't live in the United States. And so she's a foreign national, and he's seeking visitation privileges while he is on death row for killing another inmate and has a long prison record of violent offenses while in prison. And there are naturally security concerns associated with such a request, a visiting request when he violated the prison regulations in marrying her to begin with, and so they knew nothing about her. Well, I want to be very clear that we are not saying that BOP does not have the right or is entitled to do any necessary security checks on Mrs. Agofsky. And that should have happened before he married her. And because it didn't, the prison had a security obligation to conduct some investigation when he requested visiting privileges with her. Yes, and that's all my client wants. He wants them to look at the request without the prior relationship requirement. Mrs. Agofsky submitted all the documentation necessary to do these security checks in 2020, and all my client wants is for them to look at those materials and apply the proper standard under the regulations. But I also want to pause on the marriage regulations because this has been a point of great frustration to Mr. Agofsky in this case, which is that in the Terre Haute marriage supplement to the BOP marriage policy, it says that the intended spouse must be on an inmate's visiting list. So you can't get married unless they're on your visiting list, and they can't be on your visiting list unless they satisfy the prior relationship requirement. So you can't get married to someone unless you – But he didn't even attempt to get her on the visiting list for purposes of marriage. He just went and got married. And I think that's one of his big problems is the BOP has very specific regulations. If you want to marry somebody while you're in prison, you can do so, but you have to comply with these requirements. So to say, well, she wasn't on the list as an intended spouse is kind of circumventing the first question. He needed to let people know and try to comply with the regulations. I'm sorry. I might have misspoke. The marriage policy says that you can't get married unless the person is on your visiting list, and they can't be on your visiting list before they're – I understood that. But he also – there are requirements and notifications that he has to comply with in order to get married that he didn't do. BOP has – is not taking the position in this litigation that she is not his wife. They expressly recognized the marriage. They didn't have to do that. They could have said something different when they initially got the request. I'm not sure what the word recognize means there, though. I mean, both parties have used that word in the briefs. I'm not sure what it means, though, for purposes of this. Isn't your argument not so much about the recognition component? Yes, that's a consequence of it. But doesn't it go more to the institutional supplement and whether or not that is appropriately including the prior – the individual being on the prior list or not? That contradiction is what I understood your argument to be, that there is not an inclusion in the administrative record of something that should have been included. If I'm understanding your question correctly, then, yes, that's exactly our point, which is that they got a request from a spouse, a wife, and they applied the friends and associate request standard to it. And that contradiction is impermissible under the law, as this court said in Caldwell v. Miller. It is axiomatic that agencies have to follow their own regulations. So they can't come into court now and say that there was some other problem with the marriage when they have since 2020 acknowledged that she is his wife. If we think that the administrative record has sufficient evidence to show that it's not because of the friends and family requirement but because of security concerns that they didn't allow this, do you agree that's a sufficient reason? I don't because even if you can find security concerns in the administrative record, the conclusion that they took from that was that we are going to apply the prior relationship requirement. And even if you have reasons to apply the wrong standard, you can't apply the wrong standard. So you don't think the security concerns and the requirement to assess security concerns to know more about their relationship, including a prior relationship, would be sufficient for strong circumstances? I think that's a slightly different question than what I intended to say just now, which is that if they had security concerns and said that is the reason that we are denying this request under 540.44A, that would certainly be sufficient to deny a request as long as they decide it rises to the level of strong circumstances which preclude visiting, which is really strong language. But so long as they are evaluating whether the security circumstances meet 540.44A, that is perfectly permissible. That is not what happened here. What happened here is at best they said there are security concerns and therefore we need to treat this like a 540.44C. You can't do that. It is very clear under the law, Caldwell v. Miller, Morton v. Ruiz, the Accardi Doctrine, all of these cases that agencies have to follow their own regulations, and they didn't here. If we hold the institutional supplement is a valid exercise of the warden's discretion, does Zagofsky lose? If the institution supplement which says that immediate family has to be verified on the presentence, if you hold that that is a valid exercise of the agency's discretion, I don't think you can because I don't think that is consistent with the regulations, and an institution cannot pass an institution supplement and have those be the binding rules that affect prisoners in that facility that contradicts a BOP regulation. What if it falls, though, within the warden's discretion for security reasons? An agency, a subsidiary department of an agency cannot exercise its discretion in a way that contradicts the regulations. And again, the regulations do afford a great degree of discretion to BOP, but the bound of that discretion is violating their own regulations, and the bound of that discretion is on the fly saying we're going to call this a 540C case instead of a 540A. If they applied 540.44A and determined the visit was a security problem, we wouldn't be here today. We are here because they applied the wrong standard. That's what the APA requires. The agency needs to go back and do it right under the right standard. Even if we were to rule your way, that doesn't mean that the – it means you're asking for a remand for purposes of the district court to reassess this. You're not asking for some type of a ruling from us with regard to the marriage or anything like that. We are asking for an injunction. We are asking for a remand to the district court with instructions to enter an injunction that – again, a very narrow injunction that requires BOP to apply its own rules. And so Mr. Rogofsky would resubmit his request, and they would reconsider it under the proper standard. They would be able to deny it if necessary. We don't think that's what's going to happen. But, yeah, it's a very narrow remedy, and we are not asking for a pronouncement that she has to be able to visit. Didn't the BOP make clear that it wasn't necessarily over, that he could submit additional information and they would assess it? Throughout the administrative record, they did ask for more documentation, but the documentation they were asking for was proof of prior relationship, which includes the enumerated co-signed leases or signed and dated letters. In order to assess special circumstances, is it your position that they can never ask for proof of prior relationship of a marriage that didn't comply with the BOP requirements? I do want to distinguish here between asking about a prior relationship, any kind of inquiry in that. That's totally appropriate. Imposing a requirement is not. And I'll just quote a couple times from the record. They said to Mr. Rogofsky, the inmate must have known the proposed visitor prior to incarceration. That's Essay 17. A different official said the exact same thing on Essay 19. On Essay 19, that official said, your prospective visitor will need to prove that you had a relationship prior to incarceration. So this was not asking for documentation to do some sort of investigation. It was telling him that if he couldn't supply this proof, then it was the end of the road for him. By the time the request got to the regional level, the rationale for the agency's action was expanded beyond the citations that you've just given. And a fair reading of the regional directors and then the National Inmate Appeals Administrators' decisions is that this was a prior relationship inquiry because of the unusual circumstances of this marriage. And nothing in Subsection A of 540.44 precludes a prior relationship inquiry as part of the special circumstances inquiry. I don't think that's right, Your Honor, because I'm looking at the regional director's response. It starts with a list of hypothetical factors that come into play in assessing a visit request. In any case, they're not saying that these circumstances are present in this case. And again, I think this response has to be understood in the context of what came before. They had the question before them. Looking at the official responses in Ms. Turgofsky's appeals, it was clear the crux of the question is, does the prior relationship requirement apply to this individual? And they affirmed that. And I don't think that they're expanding the rationale here in any way beyond saying that that was permissible. And same with the central office. The central office just affirms what came before. And just pausing on this point about 540.44A and what it leaves room for, it is unusually strong language. The default is that family gets to visit, and you have to have a really strong reason to deny family. And so it's not that just any security concern would defeat that presumption, and that is the presumption that Mr. Turgofsky is entitled to for his wife. I just want to briefly touch on the other preliminary injunction factors. There is irreparable harm here. Mr. Turgofsky is on death row. He has a finite amount of time, and every day that passes when he is not able to see his wife's face is a huge loss. Has he made any efforts to try again to get her to visit, like the BOP invited him to? Yes, many, many times. Many times. They have submitted the application and their materials at least three times. There have been attempts at informal resolutions. Has he provided information on whether or not there was a prior relationship? They have known that since 2020. That is in the record. They said there's a checkbox on the application that says, is there a prior relationship? And Mrs. Zagofsky checked no. It's in the letter from the Habeas Council. They are not still awaiting that fact. I do see I'm low on time, and I'd like to reserve a few minutes for rebuttal. That's fine. Thank you. Thank you. Ms. Myron. Good morning. May it please the Court, Laura Myron for the Bureau of Prisons. This appeal is about whether the district court abused its discretion when it denied a preliminary injunction that requested access by a foreign national residing abroad to the most secure of BOP's maximum security facilities. I think it's important to note at the outset that on appeal, Mr. Agofsky has dropped his request for an order allowing Ms. Agofsky access to the prison, and he has acknowledged in his reply brief at 12 and 13 and 26 that the Bureau can ask questions about a prior relationship and may take into account the answers. So at most, he's asking for an injunction that would stop defendants from applying what he calls a categorical requirement. But that's not what the Bureau did here. If you look at the administrative record as a whole, the first time the Bureau learned of Ms. Agofsky's existence was in his initial request for visitation. So she's coming to the Bureau as a stranger, and the response reflects that. Now, as has been discussed, BOP has acknowledged that it is not contesting the validity of the telephonic marriage. That's on page 32 of the short appendix. But at the outset, BOP reasonably had some questions. Mr. Agofsky refused to answer them, and he has argued consistently that all that is required is a proof of valid marriage and then treated the Bureau's response as constructive denial to sue. BOP's regulations do make clear that spouses get special consideration, but usually spouses are reflected as a known quantity because they will have been in the inmate's pre-sentence investigation report, or they will be someone who's gone through the marriage regulations and given the Bureau an opportunity to acquire some additional information about that. What you have here is a sort of third circumstance that the regulations don't expressly contemplate what will happen. What happened in this case, and this is reflected throughout the administrative record, is that the Bureau asked some questions about the prior relationship Mr. Agofsky had with his spouse. And I'd like to note that it is true that she checked the box on the form that said they had not had a prior relationship, but he has never provided any information about their prior relationship history. I think, you know, if hypothetically we had had a circumstance in which the response to the inquiry was, you know, we didn't know each other prior to incarceration, but we've been pen pals for an extended period of time, we've developed a relationship, and I would like this person to come and visit, you might see a very different administrative record than the one that you see before you. But this is an APA case, and you're asked to rule on the record as it exists before you. And I would also reiterate, as I said at the opening, this is a preliminary injunction, and so not only has he failed to show he's entitled to a preliminary injunction in terms of likelihood of success on the merits, but he hasn't shown any reason why it would be problematic for him to await the conclusion of this litigation to, you know, if the district court determines that a remand is appropriate to go back and, you know, get the kind of redo that he's now asking this court for. A preliminary injunction is extraordinary relief, and he has not made the appropriate showing that would allow this, you know, the district court or this court to grant that kind of relief. On the state of the record, is the Royer Declaration part of the record? And if it is not, how might it change an outcome if it became part of the record? The district court did consider the declaration. I think that was appropriate to do so under this court's case law in, for example, Bagdonas, in which what the court said is where you have an explanation for the agency's actions submitted by the officer who had authority to act for the agency, which is what you have in the Royer Declaration, that it is appropriate and sometimes the most expedient thing to do for the court to consider that kind of additional explanation. At the time, the court cited to – in Bagdonas, the court cited to DHS versus Regents, which says that, you know, under the circumstances, you might get a remand for additional explanation, and there's sort of no need to go through that process if what you have is the additional explanation before you. What exactly was Royer's role in the administrative process? I believe he's the head of the unit team, and you will note through the record that it says, your unit team has requested more information and refers to the unit team as deciding the request that had been submitted. But I'd like to answer the second part of your question, which is if you don't consider the Royer Declaration, does that change the outcome? No. What I think this most important point of context that the Royer Declaration provides is that this request is the first time that the Bureau is learning of Ms. Zagofsky, and you can get that from the administrative record itself. The record refers to the proposed visitor. It refers to the individual. It does not refer to her as his wife until much later in the record. That's, as I said, on page 32 of the plaintiff's appendix. And so what you see from looking at the record is that at the outset, the Bureau was treating this request as though it had come from a stranger, and as it develops, you see additional explanation, as Your Honor pointed out, about security concerns, about whether a prior history might illuminate some information that would mitigate any concerns. And it's true that that's sort of explained in more detail in the Royer Declaration, but you don't need that to get that from the administrative record as it stands. And as I noted, what plaintiff has asked for is a remand for additional explanation, and so if the court were to determine that a remand was appropriate, I think what you would get is sort of a new version of the Royer Declaration. I mean, certainly if that's ultimately what the court wants, we can do that, but as the court noted in Baghdadis, it is often the case that where you have that explanation already before the court, it is appropriate to consider it, as the district court did, and may be sort of the best way to go in the interest of expediency. If the court has no further questions? Thank you. Ms. Palmer, you have a little time left. I'll start with the last point. My proposing counsel said that we are asking for a remand for additional explanation. That is not what we are asking for. We are asking for BOP to reconsider the request without the prior relationship requirement and under the proper standard. They are now saying without prior relationship, are they allowed to look at and inquire into it?  Yes, but they're now saying that they needed to learn more about the history of the relationship, ask questions, those sorts of things. Those are all things that are permissible, but they haven't done that because they have been myopically focused on the prior relationship requirement, which the administrative record shows, for the entire five years now that we have been in this process. And I think it's telling that they aren't defending what they actually did in the record. They are using the Royer Declaration to do a 180 from what the record shows. They are not saying that they imposed a prior relationship requirement with the Royer Declaration in their briefs, but at the time, again, I already quoted the parts of the administrative record that say, you have to prove this prior relationship. That is a prior relationship requirement in every meaningful sense. And the Royer Declaration, I don't think this court should consider it. I think that the APA law is quite clear on this, but I don't think it changes the outcome because even if those reasons existed at the time, that is not a justification to then, on the fly, play fast and loose with the regulations and impose a different standard. And we think there's every reason that if BOP reconsiders this request and without the improper prior relationship requirement that there will be a different outcome here. But even if there weren't, this is the point of the APA, that an agency has to do things right according to the book, according to its regulations, and that's appropriate here. And just one other point, which is that they, again, they have had all of Mrs. Ogofsky's documentation since 2020, and all my client wants is for them to attempt the background check, to look into those materials, anything necessary, but if it doesn't meet the incredibly high hurdle of the 540.44A presumption, then she should be able to visit, just a non-contact visit. He just wants to see her face through six inches of plexiglass. Thank you. Thank you. Thank you. Our thanks to all counsel. The case will be taken under advisement.